UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| JESSIE J. WASHINGTON, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 09-92-ART |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION AND** |
| J.C. ZUERCHER, Warden, ) | **ORDER** |
| ) | |
| Respondent. ) | |
| ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Jessie J. Washington ("Washington") is a prisoner incarcerated at the United States Penitentiary-Big Sandy in Inez, Kentucky. Washington filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, R. 2, to which the United States responded, R. 12, and Washington replied, R. 14.

### BACKGROUND

On March 16, 2002, Michigan authorities arrested Washington for assault and weapons offenses. R. 12, Ex. 1 ("Decl. of Kelly") at 1-2. On June 19, 2002, a Michigan court sentenced Washington to fifteen years. *Id.* at 2.

On September 1, 2004, while he was still incarcerated in Michigan, Washington was indicted in federal court. *See United States v. Washington*, No. 04-80729, R. 1 (E.D. Mich. Sept. 13, 2005). On September 13, 2005, Washington was sentenced to thirty months in prison, five years of supervised release, and $93,300 in restitution for aiding and abetting in bank fraud.

*Washington*, No. 04-80729, R. 36. On September 14, 2005, federal authorities returned Washington to Michigan state prison and lodged a federal detainer. *Washington*, No. 04-80727, R. 43, Ex. A. On September 15, 2005, Michigan authorities signed a copy of the federal detainer. *Id.*

On June 5, 2007, Washington completed his Michigan sentence, and Michigan authorities transferred him to the custody of Ohio authorities because of an outstanding warrant. Decl. of Kelly at 2. A week later, on June 12, 2007, Ohio authorities released Washington, apparently unaware of the federal detainer. *Id.* at 2-3. Washington indicates that upon his release he properly reported to his parole officer, and he notified his parole officer "of a possible pending federal detainer and/or warrant." R. 2 at 3.

On August 6, 2008, federal authorities learned that Washington was paroled from Michigan's custody on June 5, 2007. *Washington*, No. 04-80727, R. 43, Ex. A. On August 8, 2008, the United States submitted an *ex parte* application for a bench warrant. *Id.* On August 13, 2008, Washington was arrested and taken into federal custody. Decl. of Kelly at 3. While in federal custody, Washington demanded that he receive credit from when Michigan released him to Ohio authorities, June 5, 2007, through when federal authorities arrested him, August 13, 2008. *Id.* His administrative remedy requests were denied at each level. *Id.*

**DISCUSSION**

Because the petitioner is not represented by an attorney, the petition is reviewed under a more lenient standard than applied to the pleadings of attorneys. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001) (citing *Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972)). On July 8, 2009, Washington filed the instant petition for a writ of habeas corpus seeking credit for the time he was at liberty: June 12, 2007, to August 13, 2008. R. 2 at 5. He appears to contend that: (1) his federal sentence commenced under 18 U.S.C. § 3585(a) on June 12, 2007, and (2) he is also entitled to credit against his federal sentence for the fourteen months he was at liberty, pursuant to the doctrine of credit for time at liberty. Both these arguments fail.

**I.      18 U.S.C. § 3585(a)**

Washington contends that his federal sentence commenced on June 12, 2007, when Ohio authorities released him. He is wrong. "A [federal] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Washington was not received into federal custody on June 12, 2007, nor did he voluntarily go to an official detention facility on that date to start his federal sentence. He claims that he notified the U.S. Marshals of his upcoming release, and that he notified his state parole officers of a pending federal detainer. R. 2 at 2-3. However, those actions do not equate with voluntarily going to an official detention facility. Under the plain language of § 3585(a), he did not commence his federal sentence until August 13, 2008, when federal authorities arrested him.

Washington does not argue nor is he seeking credit for the time when Michigan "loaned"

3

him to the United States pursuant to a writ of habeas corpus *ad prosequendum* for prosecution of his federal crime. *See Washington*, No. 04-80727, R. 9. If he was, the Court's decision would turn on whether he received credit toward his state sentence for that time. *Blackwater v. Sanders*, 59 F. App'x 112, 113 (6th Cir. 2003) (citing 18 U.S.C. § 3585(b); *United States v. Wilson*, 503 U.S. 329, 337 (1992))*; see also McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir. 1993) (holding that the petitioner be credited his time in federal custody awaiting his federal sentence because he was paroled on his state charges while in federal custody). But those facts are not before the Court.

**II.     Credit for time at liberty**

Washington also argues for sentencing credit based on the doctrine of credit for time at liberty outlined in *White v. Pearlman*, 42 F.2d 788 (10th Cir. 1930). That doctrine is inapposite since the erroneous release here occurred while he was serving state sentences not a federal sentence.

In *White,* a prisoner confined in a Texas state penitentiary for a *federal crime* was released prematurely before serving his entire federal sentence. 42 F.2d at 789. The situation here is different because Washington was serving state sentences when released. Despite the federal detainer, Ohio authorities released Washington from their custody. Ohio should have directly transferred Washington to the United States so he could start to serve his federal sentence. However, when Michigan authorities transferred him to Ohio authorities, they apparently failed to provide documentation of his federal detainer. Decl. of Kelly at 2. Thus, the mistake here occurred before Washington's federal sentence commenced. *White* is distinguishable because there the prisoner was serving his federal sentence when he was

4

erroneously released.

Though the Sixth Circuit has not addressed *White*, it did address a case almost identical to the instant case. In *Myles v. United States*, a case where a federal prisoner sought credit on his federal sentence for time at liberty as a result of Tennessee authorities erroneously releasing him despite a federal detainer, the Sixth Circuit stated:

> The doctrine of credit for time at liberty entitles a convicted person to credit against his sentence for time erroneously spent at liberty, so long as the government was guilty of simple or mere negligence and the delay in execution of the sentence was not the defendant's fault. *United States v. Martinez*, 837 F.2d 861, 865 (9th Cir. 1988). In this case, the delay is attributable to state authorities, and to some extent, Myles himself. Thus, Myles is not entitled to credit for time at liberty and his claim necessarily fails.

No. 98-6097, 1999 WL 644149, at *2 (6th Cir. Aug. 16, 1999). Washington is not entitled to credit for his time at liberty for the same reasons that the petitioner in *Myles* was not. The delay in executing his federal sentence is due to the error of Ohio and Michigan—not the United States. For Washington to be entitled to credit, the United States must have been "guilty of simple or mere negligence." *Id.* But there is no evidence that the United States was negligent. He claims that he notified the U.S. Marshals of his upcoming release. R. 2 at 2-3. He provides no evidence of this notification. Even if he did notify the Marshals, he did so before his release. At that point, he was still serving state sentences so it was the state authorities' responsibility to transfer him to federal authorities after he completed his state sentences. Moreover, the federal authorities fulfilled their responsibility because they lodged a federal detainer with Michigan authorities when he was returned to their custody on September 14, 2005. Decl. of Kelly at 2. Washington admits that federal authorities lodged a detainer against him. R. 2 at 3 ("Days after

5

[the federal sentencing proceedings], a federal Detainer was lodged against petitioner."). There is also evidence that the Michigan authorities provided a signed acknowledgment to the U.S. Marshals that they received the federal detainer. *Washington*, No. 04-80727, R. 43, Ex. A; *Cf. Vega v. United States*, 493 F.3d 310, 322 (3d Cir. 2007) (holding that federal authorities may have been negligent when they did not have an acknowledgment from New York officials that they received the federal detainer). If anything, the only evidence of negligence is on the part of the state authorities. The Michigan authorities apparently failed to provide the federal detainer to Ohio authorities when he was transferred to their custody because of an outstanding warrant. Decl. of Kelly at 2. Thus, there is no evidence that the United States was negligent.

Other circuits agree that the error of state officials cannot affect a defendant's federal sentence. *See, e.g., Leggett v. Fleming*, 380 F.3d 232, 235-36 (5th Cir. 2004) ("Where there is no evidence that the governmental authority seeking to enforce the prisoner's sentence has erred, a prisoner should not be allowed to avoid service of that sentence."). Some circuits require more than negligence on the part of the United States for the doctrine of credit for time at liberty to apply. Those circuits only provide habeas relief under this doctrine when the petitioner shows that the United States intentionally delayed imprisonment. *Espinoza v. Sabol*, 558 F.3d 83, 90 (1st Cir. 2009) (stating that "mistakes are simply part of life" and not enough to justify applying the doctrine of credit for time at liberty); *Bintzler v. Gonzales*, 239 F. App'x 271, 275 (7th Cir. 2007) (holding that the time at liberty doctrine is "of dubious application where the government has not intentionally sought to delay . . . imprisonment."); *Free v. Miles*, 333 F.3d 550, 554 (5th Cir. 2003) (stating that the doctrine's "sole purpose is to prevent the government from abusing

6

its coercive power to imprison a person by artificially extending the duration of his sentence through releases and reincarcerations."). There is no evidence that the United States intentionally delayed Washington's imprisonment. Under that higher standard, Washington's claim also fails.

In the alternative, Washington seems to argue that the governments violated his due process rights by delaying execution of his federal sentence. R. 2 at 2. In other words, he appears to argue that the doctrine of credit for time at liberty implicates his due process rights. However, courts have consistently rejected such arguments. *See Vega*, 493 F.3d at 317 ("[W]e do not find a constitutional basis upon which to anchor the rule of credit for time spent erroneously at liberty."); *Cain v. Menifee*, 269 F. App'x 420, 425 n.6 (5th Cir. 2008) (holding that the doctrine of credit for time at liberty is only a "common law rule" and does not implicate constitutional due process (quoting *Free*, 333 F.3d at 554)); *Dunne v. Keohane*, 14 F.3d 335, 336-37 (7th Cir. 1994) (stating that the doctrine of credit for time at liberty is "only a rule of interpretation . . . not a constitutional command, although appeals are sometimes made, for the most part unavailingly, to notions of double jeopardy or due process.") (citations omitted). These other circuits' opinions make clear that the doctrine of credit for time at liberty comes from common law—not the United States Constitution. They are correct. Since there is no constitutionally protected interest in the doctrine of credit for time at liberty, there is no due process violation.

Washington points out that the government's delay in arresting him prejudiced him and took away the "liberties associated with society." *Id.* at 5-6. It is indeed an unfortunate situation

7

where state authorities erroneously release a person, that person begins his life anew, and then federal authorities arrest him to execute a pending federal sentence. Yet, the Court is limited in its power and cannot provide the remedy that the petitioner seeks.

**III.    Pending motions**

Washington also filed a motion requesting discovery of, among other things, documents filed in his federal criminal proceedings, R. 15, and a motion for an evidentiary hearing, R. 16. Because the Court can rule on Washington's petition without this discovery or a hearing, these motions are denied. Further, the documents requested are already matters of public record filed in this proceeding or Washington's federal criminal case. As such, they are available without discovery.

## CONCLUSION

Washington's petition for credit for the fourteen months that he was at liberty is denied. His federal sentence did not begin until federal authorities arrested him on August 13, 2008. The error of state authorities upon completion of his state sentences cannot affect the federal sentence that he is now servicing. Thus, his federal sentence will not be credited any time.

Accordingly, it is **ORDERED** as follows:

(1)    Washington's petition for a writ of habeas corpus, R. 2, is **DENIED**.

(2)    Washington's motion for discovery, R. 15, and motion for evidentiary hearing, R. 16, are **DENIED.**

(3)     A Judgment will be entered contemporaneously with this order.

This the 24th day of February, 2010.



Signed By:
*Amul R. Thapar* AT
United States District Judge